UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 0:15-cr-60274-JIC


*****************************************

UNITED STATES OF AMERICA,

v.

BURTON D. GREENBERG,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES' RESPONSE TO THE DEFENDANT'S
OBJECTIONS TO THE PRE-SENTENCE INVESTIGATION REPORT

The United States hereby respectfully files it response to the defendant's January 25,

2016, Objections to the Pre-Sentence Investigation Report (hereinafter "PSI") which was filed by

the United States Probation Office (hereinafter "Probation") on December 18, 2015.

1.   The Loss Amount Was Properly Calculated

The PSI properly found that the defendant was responsible for losses totaling just over

$10,000,000.  PSI ¶56.  On November 6, 2015, the defendant pursuant to a 26 page written plea

agreement, pled guilty to the sole count of the indictment conspiracy to commit wire fraud, in

violation of Title 18, United States Code, Sections 1343 and 1349.  As part of that plea

agreement the defendant stipulated that:

> the loss amount exceeded $7 million but was less than $20 million resulting in an
> increase to the base offense level of an additional 20 points pursuant to U.S.S.G. §
> 2B1.1(b)(1)(B).  *See* Plea Agreement ¶6(b)

The defendant further agreed that the appropriate loss figure for purposes of Restitution

to the victims is $10,010,798.  Plea Agreement ¶1(d)

The defendant also agreed:

Pursuant to Title 18, United States Code, Section 981(a)(1)(C) by Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853(p), the defendant will consent to entry of an order directing forfeiture to the United States of the property described in the Forfeiture Allegation in the indictment described above, or to any substitute assets, or to a money judgment, all as more fully set out below:
A Money Judgment in the Amount of $10,010,798.00 in U.S. Currency.
*See* Plea Agreement ¶1(e)

At this juncture the defendant now argues that he should be held accountable for only $9,400,000 in loss because "only Kane and Novick could approve these trades" that led to the $600,000 in losses, and "there is nothing alleged that shows that Greenberg engaged in these trades to further the scheme and to enrich himself." Defendant's Motion a pp. 3, 6 and 7. That is simply not true and flies in the face of the indictment to which the defendant pled guilty and the plea agreement.

The defendant admitted in his Plea Agreement and the Indictment alleged that:

In March 2001, GREENBERG directed Kane and S.N. to transfer the GFF8 principal to a bank account in Italy. GREENBERG and Taskin then directed unauthorized trades using the GFF8 principal resulting in a loss of approximately $600,000. These trades violated the Investment Management Agreement, Investment Management Agreement Addendum and Limited Power of Attorney all which promised that the GFF8 principal would always be under the control of Kane and S.N. and not be at "risk of loss or lien." *See* Plea Agreement ¶5(f) and Indictment ¶9.

The Indictment also specifically, realleged and incorporated by reference ¶9 in the Conspiracy to Commit Wire Fraud count. *See* Indictment ¶12. Furthermore, had the Greenberg and his co-conspirators not hidden their initial loss of $600,000 from the investors' they would not have been able to divert the remaining $9.4 million for their own unjust enrichment as the investors would have been aware of their breach from the outset and demanded a return of their investment.

2

Finally, the defendant admitted that as part of the conspiracy he lied and caused others to lie about the principal investment of $10,000,000 being intact throughout the conspiracy timeframe covering up the original improper trading and loss of $600,000 which provided the defendant and his co-conspirators the opportunity to misappropriate the remaining principal investment.  *See* Plea Agreement ¶5(l) and 5(l)(3) and Indictment ¶24.  Thus the PSI has properly calculated the loss amount as just over $10,000,000.  PSI ¶56.

 2.   <u>An Enhancement For Obstructing Or Impeding
       The Administrations Of Justice Is Justified In This Case</u>

The PSI recommended a 2 level enhancement for obstruction of justice.  PSI ¶¶72-74. An enhancement for obstruction of justice is appropriate when a defendant provides a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense.  *See* U.S.S.G. §3C1.1 Application Note: 4(G). Material statement as used in this section means a statement that, if believed, would tend to influence or affect the issue under determination.  *See* U.S.S.G. §3C1.1 Application Note: 6.

To show that Greenberg's conduct actually resulted in a hindrance, the government must demonstrate how it fruitlessly spent investigation or prosecution resources due to Greenberg's untruthfulness.  *See*, *United States v. Banks*, 347 F.3d 1266, 1271 (11th Cir.2003) *citing United States v. Thomas*, 86 F.3d 263, 263-64 (1st Cir.1996) ("The district court did not err in concluding that the shift in prosecution resources and attention constituted a 'significant hindrance' within the meaning of § 3C1.1, comment. (n.[5] (a))").

The defendant in this case was interviewed by the FBI on March 24, 2015.[1]  During the course of that interview on multiple occasions he deliberately provided materially false information to the agents designed to cover up his misuse and misappropriation of investor

---

[1]  A copy of the FBI Report of Interview is attached hereto as Exhibit 1.

funds. Specifically, the defendant stated that the $7.4 million that he and Taskin exclusively controlled in 2005 was, at his direction, invested entirely in REFCO on behalf of the GFF8 investors and then subsequently lost overnight when that company collapsed in October of 2005.

As a result, of these statements the FBI and U.S. Attorney's office spent a considerable amount of time and resources trying to determine the veracity of these claims. Specifically, FBI agent Joel Mercer and financial analysts employed by the U.S. Attorney's Office spent a significant amount of time reviewing a database of over 30,000 e-mails sent or received by the defendant as well as banking documents received from numerous banking institutions. This review definitely proved that the investors' $7.4 million was not invested in a GFF8 account at REFCO on behalf of the investors as the defendant claims. Instead what funds were invested in REFCO was invested on behalf of the defendant and his co-conspirator Senol Taskin not on behalf of GFF8. That account was held in Taskin's name and transfers from it were directed by the defendant. Furthermore, these funds were not lost overnight in the 2005 REFCO collapse as the defendant claimed but were in fact transferred to other bank accounts controlled by the defendant, the defendant's wife, or Taskin or were lost in other trading conducted on behalf of the defendant and Taskin prior to REFCO's collapse. See REFCO related documents attached hereto as Exhibit 2.[2]

The PSI also recommended a 2 level enhancement for the obstruction of justice based upon the perjury the defendant committed during an August 20, 2014 Civil Deposition. PSI ¶74. An enhancement for obstruction of justice is appropriate when a defendant commits perjury

---

[2]  The PSI also properly points out that the defendant when interviewed by the FBI on March 24, 2015, claimed to have access to numerous overseas bank accounts which could make the victims whole but refused to provide agents with the location and names associated with those accounts. PSI ¶73  However, when interviewed by the Probation Department the defendant now claims that he and his wife have no foreign bank accounts.  PSI ¶¶ 73 and 123.

during the course of a civil proceeding if such perjury pertains to conduct that forms the basis of the offense of conviction.  See U.S.S.G. §3C1.1 Application Note: 4(B).

In an August 20, 2014 deposition where victims of fraud[3] were trying to recover a portion of the GFF8 funds, the defendant lied about:  (1) the amount of remaining GFF8 principal funds; (2) the profitability of the GFF8 investment; (3)  where the GFF8 principal funds were currently located; and (4) where the  alleged GFF8 profits of $17 million were currently located.  *See* Deposition Transcript pp 5, 26-31, 53 and 64-65. [4]  These lies clearly pertain to the conduct that forms the basis of the offense of conviction.  In fact, they lie at the heart of that conduct and represent a continuing course of conduct designed to lull the investors into a false sense of security.

Interestingly, the defendant did in fact tell the truth about one thing when it came to the victims' investment.  The defendant truthfully testified at the Deposition that the 2005 REFCO collapse had nothing to do with the loss of the GFF8 investors' money.  *See* Deposition Transcript pp 116-117.  This further supports the Government's position that the materially false information the defendant provided to FBI agents a year later was in fact done deliberately to obstruct their investigation and was not a merely a lapse in memory or inadvertent inconsistency as the defendant now asserts.  *See* Defendant's Motion at 7.

---

[3]  The deposition was being conducted on behalf of the Thaler Howell Foundation a victim in this case as well as a victim of a separate fraud conducted by Joseph Finney.
[4]  The relevant Deposition Transcript pages are attached hereto as Exhibit 3.

**3.   An Enhancement For A Substantial Part Of The Scheme Being Committed From Outside The United States Or Involving Sophisticated Means Is Warranted**

The PSI recommended a 2 level enhancement for a substantial part of the scheme being committed from outside of the United States or the offence involving sophisticated means.  PSI ¶79.  U.S.S.G. §2B1.1(b)(10) provides:

> If (A) the defendant relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials; (B) a substantial part of a fraudulent scheme was committed from outside the United States; **or** (C) the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means, increase by 2 levels. If the resulting offense level is less than level 12, increase to level 12.  (emphasis added)

Thus a finding of either a substantial part of a fraudulent scheme being committed from outside the United States or the use of sophisticated means which can be attributed to the defendant is sufficient to support this enhancement.  *See* U.S.S.G. §2B1.1(b)(10)

Here there is overwhelming evidence that a substantial part of the scheme was committed from outside the United States.  The defendant admitted in the plea agreement that:

> In March 2001, GREENBERG directed Kane and S.N. to transfer the GFF8 principal to a bank account in Italy.  GREENBERG and Taskin then directed unauthorized trades using the GFF8 principal resulting in a loss of approximately $600,000.  These trades violated the Investment Management Agreement, Investment Management Agreement Addendum and Limited Power of Attorney all which promised that the GFF8 principal would always be under the control of Kane and S.N. and not be at "risk of loss or lien."  *See* Plea Agreement ¶5(f) and Indictment ¶9.

> In August of 2003, GREENBERG and Taskin directed Kane to transfer the remaining GFF8 principal from an account in the name GFF8 in the United States to personal bank accounts in Kane's name in Canada.  Kane transferred $9.4 million on August 13, 2003 from an account in the name GFF8 in the United States to personal bank accounts in Kane's name at TD Bank in Canada.  *See* Plea Agreement ¶5(g).

> From September 16, 2003 to October 6, 2003, Taskin wired $7.4 million in GFF8 principal from Kane's TD Bank in Canada to a TD Bank account held in the name of Maulyn Trading, a company owned and operated by Taskin.  GREENBERG approved of this transfer before Taskin executed it.  *See* Plea Agreement ¶5(i).

On May 20, 2004, Taskin transferred approximately $7.4 million of GFF8 principal from the Maulyn Account held in Canada to a personal bank account in Italy held in Taskin's name.  Both Taskin and GREENBERG agreed to the transfer even though both knew that it was GFF8 investor money and not theirs.  *See* Plea Agreement ¶5(j).

From October 2004 to November 2005, GREENBERG, Taskin and Kane concealed the improper diversion of the GFF8 principal by making and causing to be made over $1.7 million of phony "profit" payments to investors using GFF8 principal to lull investors into believing that the GFF8 principal was invested properly and was profitable. GREENBERG, Taskin and Kane accomplished this task by transferring GFF8 principal funds through numerous accounts they controlled and ultimately having a portion of these funds deposited back into an account maintained by Kane in the United States at Bank of America which was held in the name of GFF8.   The transfers used to facilitate these lulling payments are set forth below:

(1) From September 9, 2004 to September 27, 2004 Taskin transferred over $8 million in GFF8 principal from Taskin's bank account in Italy to Taskin's Refco account in the United States.

(2) From November 22, 2004 to March 11, 2005 Taskin transferred over $1.6 million in GFF8 principal from Taskin's Refco account to GREENBERG's M&P account at Wachovia Bank.

(3) From August 25, 2004 to October 13, 2004 Taskin transferred over $340,000 in GFF8 principal from Taskin's bank account in Italy to GREENBERG's M&P account at Wachovia Bank in the United States.

(4) From April 6, 2005 to June 21, 2005 Taskin to transferred over $300,000 in GFF8 principal from Taskin's Refco to Kane's TD Bank account.

(5) From August 16, 2004 to January 31, 2005 Kane transferred over $200,000 in GFF8 principal from one of Kane's TD Bank accounts to another Kane TD Bank Account.

(6) From September 17, 2004 to August 24, 2005 GREENBERG transferred over $1.2 million in GFF8 principal from M&P's Wachovia Account to Kane's TD Bank account.

(7) From October 12, 2004 to October 31, 2005 Kane transferred over $1.7 million in GFF8 principal from one of Kane's TD Bank accounts in Canada to a Bank of America account in the United States maintained by Kane and held in the name of GFF8.  Kane then used the Bank of America account to make the phony "profit" payment distributions to GFF8 investors.  *See* Plea Agreement ¶5(m).

Thus, the scheme involved the investors' money being transferred around the world at the direction or approval of the defendant.  The defendant had the investors' money transferred to Italy, Canada, back to Italy, and then to various accounts in the United States.  Furthermore, one of the co-defendants who helped execute this scheme, Senol Taskin, the defendant's business

partner, at all times during the scheme played his role of moving the investors' funds around the world from Canada.  *See* Plea Agreement ¶5(c).

Perhaps recognizing that he could not prevail on this point the only argument the defendant makes on this issue is that "(t)he allegation that a substantial part of the scheme was committed from outside the United States simply is not accurate."  Defendant's Motion at 14. As demonstrated above, the "allegation" that a substantial part of the scheme was committed outside of the United States is not only accurate it is not merely an allegation at all it is a fact that was admitted to by the defendant throughout his plea agreement.  *See* Plea Agreement ¶5(c)(f)(g)(i)(j) and (m).  As such, the enhancement for a substantial part of the scheme being committed from outside the United States was properly found to apply.

Similarly the enhancement is also supported by the fact that the scheme itself involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting the sophisticated means.  Sophisticated means are "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." *See* U.S.S.G. § 2B1.1 cmt. n. 9(B).  The Guidelines commentary identifies "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts" as ordinarily indicating sophisticated means.  *Id.*  There is no requirement that each of a defendant's individual actions be sophisticated in order to impose the enhancement.  Rather, it is sufficient if the totality of the scheme was sophisticated.  *United States v. Sosa*, 777 F.3d 1279, 1302 (11th Cir. 2015).

Here as noted above the scheme was incredibly complex as it involved the co-conspirators at the defendant's direction transferring money into different bank accounts around

the world including through shell companies like Maulyn Trading. *See* Plea Agreement ¶5(f),(g),(i),(j) and (m). These money transfers were explicitly directed by the defendant. *Id*.

Furthermore, the defendant coordinated the sophisticated payment of $1.7 million in lulling payments to the investors by "transferring GFF8 principal funds through numerous accounts they controlled and ultimately having a portion of these funds deposited back into an account maintained by Kane in the United States at Bank of America which was held in the name of GFF8". *See* Plea Agreement ¶5(m). Thus, the manner and lengths to which the defendant coordinated the theft of the investors' funds and the concealment of the true source of the funding of the phony profit payments was incredibly elaborate and clearly constitutes sophisticated means under U.S.S.G. §2B1.1(b)(10)(C).

### 4. **The Defendant Is Not Entitled To A Minor Role Adjustment**

The defendant argues that he is entitled to a minor role adjustment because: (1) the scheme to defraud was entirely of Kane's making; (2) At all times as signatory over the GFF8 bank account Kane controlled the investors' money, its movement trading and diversion; (3) the defendant was not solely responsible for the lulling activity; and (4) Kane and Taskin inflicted much more suffering on the victim's than he did. *See* Defendant's Motion at 7.

All of these arguments are absurd on their face and must be rejected. The Defendant admitted that he helped create the lulling stories that kept investors at bay for years. *See* Plea Agreement ¶5(l). He also admitted he helped coordinate the payment of lulling profits. *Id.* at ¶5(m). He admitted that he directed the movement of the investor funds. *Id.* at ¶5(f-j). He also admitted that as of October 2003 he and Taskin and not Kane exercised control over $7.4 million of the remaining $9.4 million in investor funds. *Id.* at ¶5 (i). Thus, the defendant was at the hub

of this conspiracy from the beginning directing the flow of both money and information.  As such, he is not entitled to an adjustment for minor role.

**Conclusion**

For the foregoing reasons the Government respectfully requests that the Court uphold the guideline calculations in the PSI and find that:  (1) the loss amount was properly calculated; (2) the enhancement for Obstruction of Justice was properly applied; (3) the enhancement for a substantial part of the scheme being committed from outside the United States or involving sophisticated means is warranted; and (4) the defendant is not entitled to an adjustment for minor role.

Respectfully Submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

_____

By: /s/ Thomas P. Lanigan
Thomas P. Lanigan
Assistant United States Attorney
Court ID A5500033
500 E Broward Blvd, Suite 700
Fort Lauderdale, Florida 33394
Tel: (954) 660-5790
Fax: (954) 356-7230
Email: Tom.Lanigan@usdoj.gov